## HORACE AVERILL *et al. versus* CHARLES LYMAN *et al.*

Where, after the dissolution of a partnership between W. and C., a creditor of the firm stated an account in which they were charged with certain goods purchased by them, and, at the same time, stated a separate account of his dealings with W., who had assumed the adjustment of the partnership concerns, in which account W. alone was charged with another partnership debt, it was *held*, that C. was not discharged from such other partnership debt thereby ; but that whether he was discharged or not, no one but C. could avail himself thereof, and a note given by C., either by way of security or satisfaction of such debt, would be founded on a good consideration.

Where an insolvent debtor made an assignment of his property in trust for his creditors, "a schedule and estimate of the amount of whose several debts is hereunto annexed," and the assignment contained a release. to be executed by the creditors, of "all sums of money due and owing or to become due to them respectively," "and also all their respective claims and demands whatsoever," and the name and the precise amount of one of the claims of a creditor, were inserted in the schedule, it was *held*, that such creditor did not, by executing the release, discharge a note recently executed by the debtor, as principal, and a third person, as surety, which was not included in the schedule.

ASSUMPSIT on a promissory note for the sum of $200, made by Charles Lyman, as principal, and Zadock M. Lyman,

the other defendant, as surety, dated January 31st, 1834, and payable to Averill & Prior, the plaintiffs, in four months.

Averill
*v.*
Lyman.

The parties stated a case.

On December 15th, 1832, William and Charles Lyman, who were brothers and copartners in trade at South Hadley, being indebted to the plaintiffs in the sum of $456, gave a note therefor, payable to the plaintiffs or their order, at the Hartford Bank. This note was sent to the plaintiffs, who were merchants in Hartford, by the promisers, enclosed in a letter, in which they stated, that they should probably want to renew the note for one half the amount.

On April 17th, 1733, William Lyman enclosed the sum of $162, in cash, and a note for the sum of $300, dated April 18th, 1833, signed, "For late firm of W. & C. Lyman, W. Lyman," and payable at the Hartford Bank in four months, in a letter to the plaintiffs, in which he stated that W. & C. Lyman had dissolved partnership, and he supposed the note, as written, was correct, as all the concerns of the firm were to be adjusted by him. The note was received at the Hartford bank, and entered upon the books as the note of W. & C. Lyman ; and a memorandum was written on it, indicating that it was a renewal of the note for the sum of $456.

On August 19th, 1833, W. Lyman sent the sum of $104 in cash, and a note for $200, signed by himself alone, and payable at the Hartford bank, enclosed in a letter to the plaintiffs, in which he requested them to receive the same as a payment of the note for $300. To this the plaintiffs replied by a letter addressed to W. Lyman, dated August 21st, 1833, in which they stated, that they had credited him with the cash enclosed and the note for two hundred dollars, and charged him with $300, " cash paid his note at bank," that they had found that the note for $300 taken up by them on that day, was a renewal for one given in December, 1832, by W. & C. Lyman, that it was the undeviating rule of the bank, and likewise of themselves, to renew a note but once, that in this ins'ance they had kept the note and paid the balance out of their own funds, which they hoped would soon be paid, and the new note be applied on W. Lyman's more recent account, and that they enclosed the note for $300.

Averill
v.
Lyman.

On November 6th, 1833, the plaintiffs, by a letter of that date to W. Lyman, requested payment of the sum of $ 200 paid by them on the note for $ 300, at the bank, and also stated an account against W. & C. Lyman for goods purchased sub-sequently to the date of the note for $ 456, and an account with W. Lyman. In the latter account W. Lyman was charg-ed with $ 196·20 cash paid on the note for $ 300, and was credited with the note for $ 200. The letter further stated, that they had applied the note for $ 200 on account of goods bought in the spring.

On January 31st, 1834, one of the plaintiffs called on Charles Lyman for payment of the amount due them, and the note now in suit was then given. At the same time an account was ren-dered to the defendants, in which W. & C. Lyman were charg-ed with " cash paid their note at bank, $ 300," and credited with the sum sent them by W. Lyman in cash, on August 19th, 1833, and with the note now in suit.

In the autumn of 1833, Charles Lyman succeeded William in business. On February 7th, 1834, Charles, being indebted to the plaintiffs, on his individual account, in the sum of $ 138·52, made an assignment of his property to trustees, upon the trust, after the payment of certain debts, to apply the residue of the trust money to the payment of creditors named in the assignment, including the plaintiffs, " a schedule and estimate of the amount of whose several debts is hereunto annexed," in proportion to the amount of their respective de-mands, provided they became parties to the assignment within four months from the date thereof. The assignment contained a clause whereby the creditors who became parties thereto, re-leased to the assignor, " all sums of money due and owing, or to become due to them respectively from the said Charles Ly-man, and all claims and demands they now have or may have hereafter for or by reason of having signed, indorsed or accept-ed any notes, bills or drafts for or at the request of said Charles Lyman, and also all their respective claims and demands what-soever against said Charles Lyman." In the schedule referred to in the assignment, the sum of $ 138·52 is placed against the names of the plaintiffs. The plaintiffs executed the assign-ment.

If, in the opinion of the Court, the plaintiffs were entitled to recover, the defendants were to be defaulted ; if otherwise, the plaintiffs were to become nonsuit.

*W. Bliss*, for the plaintiffs, to the point, that they did not, by executing the assignment, discharge the note now in suit, the general words of the release being qualified by the other parts of the instrument, cited *Rich* v. *Lord, ante*, 322, and cases there cited ; that in order to determine whether the giving a negotiable note is a payment of a subsisting debt, the nature of the transaction is to be examined, and the intent of the parties ascertained, *Ellis* v. *Wild*, 6 Mass. R. 321 ; *Watkins* v. *Hill*, 8 Pick. 522 ; *Eagle Bank* v. *Smith*, 5 Connect. R. 71 ; *Bartsch* v. *Atwater*, 1 Connect. R. 409 ; *Davidson* v. *Bridgeport*, 8 Connect. R. 473 ; that if the note of W. Lyman for $ 200, was not received in payment of the note for $ 300, the plaintiffs could have sued the makers of the latter note for money paid by the plaintiffs, as indorsers, or by the request of the makers, and so there was a good consideration for the note, *Kean* v. *Dufresne*, 3 Serg. & R. 233 ; *Ramsdell* v. *Soule*, 12 Pick. 126 ; *Gough* v. *Davies*, 4 Price, 200 ; *Simson* v. *Ingham*, 2 Barn. & Cressw. 65 ; *S. C.* 3 Dowl. & Ryl. 249 ; and that if the note of W. Lyman was not a discharge of the note for $ 300 by the laws of Connecticut, there was a good consideration for the note in suit, although our law might be different from that of Connecticut in this respect, *Pearsall* v. *Dwight*, 2 Mass. R. 84 ; *Blanchard* v. *Russell*, 13 Mass. R. 1 ; *Prentiss* v. *Savage*, 13 Mass. R. 20 ; *Wilson* v. *Clements*, 3 Mass. R. 11 ; *Flagg* v. *Upham*, 10 Pick. 147 ; *Kellogg* v. *Curtis*, 9 Pick. 534.

*I C. Bates* and *C. A. Dewey*, for the defendants, to the point, that the note in suit was discharged by the execution of the assignment on the part of the plaintiffs, cited *Holmer* v. *Viner*, 1 Esp. R. 132 ; *Russell* v. *Rogers*, 10 Wendell, 473 ; *Deland* v. *Amesbury Manuf. Co.* 7 Pick. 244.

SHAW C. J. delivered the opinion of the Court, (after stating the facts from the report.) Two questions have been argued in this case, to which the attention of the Court has been applied. The first is, whether the case discloses any good and legal consideration for this note. The foundation of this

*Averill*
*v.*
*Lyman.*

*Sept. 30th.*

*May term*
*1837,*
*in Hampden.*

debt was a note given by William and Charles Lyman, broth ers and copartners, residing at South Hadley, payable to the plaintiffs, Averill and Prior, merchants at Hartford, or their order, at the Hartford bank, and there discounted. That it was expected to be discounted is manifest from the fact, that it was made payable at the Hartford bank, and because the makers stated, at the time, that they should probably want a renewal. When the note became due, the partnership had been dissolved, and William Lyman made a new note by way of renewal, for $300, and forwarded it to the plaintiffs, the note purporting to be signed by William for and in behalf of the late firm. The balance of the former note being paid in cash, this was received and discounted as the note of the firm, by way of renewal.

One ground, upon which it is contended that the note in question was without consideration as against Charles, is, that William, after the dissolution, had no longer any authority to bind the firm by his contracts, and therefore, that this became the sole debt of William, and that Charles was discharged.

As a general rule, it is no doubt true, that after a dissolu- tion, the authority mutually conferred by the partners on each other by the formation of the partnership is revoked, and that no new contract binding on both can be made by either, mere- ly as such partners. But such an authority, general or special, may be conferred, by the terms of dissolution, or any other proper act. Here William Lyman professed to act for the late firm, stating that the settlement of its concerns had, by mutual agreement, been conferred on him. Such an authority may be proved, by showing either a prior act, or subsequent ratification. Here, without inquiring what is the direct proof of previous authority, there is full and uncontested proof of subsequent ratification by Charles, by assuming the debt. This still continued the debt of both. When this second note be- came due, William Lyman transmitted his own note to the plaintiffs, with cash to make up the balance, and requested them to receive this latter note for $200 as a renewal in part. This they declined to do. They paid the note for $300 at the bank, out of their own funds, and then William and Charles Lyman became jointly indebted to them, for so much money

paid to their use. The cash, $104, was credited. As to the $200 note of William Lyman, they acknowledge the receipt of it, but instead of accepting it on account of the balance of $300 paid at the bank, they propose to credit it on William Lyman's more recent account, and they request payment of the balance of cash paid at the bank. Thus far both partners continued liable.

The other fact mainly relied upon is, that in November 1833, the plaintiffs stated and forwarded two accounts, one with William and Charles Lyman, for a small account of merchandise purchased after the former note was given, and which had not been settled by notes, and another with William Lyman alone, in which the $200, the balance of the $300 paid in August, was charged. It is insisted, that, by this act, the plaintiffs took William alone as their debtor, and thereby discharged Charles. But the Court are of opinion, that such a change in the form of the account does not of itself vary the liability of the debtors. When the question is, to whom the credit was originally given, the form of the charge in the creditor's books, or on his accounts, may be very material evidence against him ; but it is not in that case conclusive, but open to explanation. But here, the plaintiffs had been informed of the dissolution, that William had undertaken, as liquidator, to adjust the concerns of the firm and pay their debts, and had promised to do so. Making out the account in his name might be considered as merely provisional, to have effect in case he should pay. It is the form of a receipt, to be signed when the money, promised to be paid by the one, is paid. Such a payment would undoubtedly discharge Charles as well as William, because, before or after dissolution, satisfaction of a debt by either of the debtors enures by law to the discharge of both. In the case of *Barker v. Blake*, 11 Mass. R. 16, where, on the dissolution of a partnership, a creditor had transferred a balance due from the late firm, to the debit of the partner who had assumed the liquidation, and some transactions had taken place between them, still, on the failure of such partner, it was held, that the creditor might re-transfer the charge on his book to the old firm, and maintain a joint action so as to hold the out-going partner.

But whether this mode of making out the account to William Lyman could, under any circumstances, have been relied upon, as a discharge of the other partner, no one but Charles could avail himself of it, and he has waived it, because when the account was again made out against William and Charles Lyman, in January, 1834, Charles admitted it, by giving his own note for the amount, with Z. M. Lyman as a surety.

I have thought it proper thus to state my views, showing that up to the time of the settlement of this last account, Charles Lyman had never ceased to be responsible for this debt, lest, if a shorter and more summary view of the law had been taken, it might give countenance to the supposition, that Charles Lyman had been exonerated, either by the note given by William for the firm after the dissolution, or by the account once made out by the plaintiffs to William alone.

But it seems to me very clear, that there is another and decisive answer to this objection of want of consideration, and that is, that it is wholly immaterial whether Charles Lyman remained responsible for this debt or not. If he chose to give his own note, either by way of security or as satisfaction and discharge of the debt of William Lyman, and did do so, it cannot be said, that such note was without consideration. If it was in satisfaction and discharge, then the release of the claim of the plaintiffs on William Lyman is a perfectly good consideration ; if it was by way of security, when paid it would enure by way of discharge of the claim on William Lyman, and the effect would be the same, as a consideration.

The other point in this case is one of more legal difficulty ; it is, that after the making of this note, and whilst it was held by the plaintiffs, they executed a release to Charles Lyman, broad enough in its terms to include and cover this note ; and it is very clear, that the release of one of two joint debtors is a release of the debt, and enures to the discharge of all.

This note was given on January 31st, 1834, at four months. On February 7th, Charles Lyman made an assignment of his property to trustees, for the payment of debts. It appears, that in the autumn of 1833, Charles Lyman succeeded William in business, and on February 7th, 1834, was indebted to Prior & Averill in the sum of $138 52. The indenture of

assignment, after certain preferred debts, provides for the equal and proportionate payment of sundry creditors named, among whom are Averill and Prior, the plaintiffs, "a schedule and estimate of the amount of whose several debts is hereunto annexed." On the schedule is put down, " Averill & Prior, . Hartford, $ 138·52." The words of the release are very general, of " all sums of money due and owing, or to become due to them respectively, from the said Charles Lyman," " also all their respective claims and demands whatsoever."

The general rule in regard to the operation of releases, is, that where there are general words of release embracing in terms all demands, if it manifestly appears, from the whole instrument taken together, that a particular demand was within the recital or consideration, it shall be intended that the words were to extend to such demand. As in all other cases, the intent is to govern. In an instrument prepared to be signed by many creditors, it is not to be presumed, that the situation and circumstances of each particular debt, and each and all of the creditors, is in the contemplation of the person who draws the instrument. The clauses are so drawn as to meet the circumstances common to the cases of all the creditors. Particular debts may be so secured by indorsers, or by collateral security, on real or personal estate, that it is not reasonable to suppose that it was intended to discharge them. Still, if it is clear from the whole instrument, that they are not excepted, they will be included. But if, from the recital or otherwise, it can be reasonably inferred, that they were not intended to be released, the general words will be modified and controlled accordingly. The general principle was considered and some of the leading authorities were cited, in a case, in which the opinion of the Court has been recently given. *Rich* v. *Lord, ante,* 322.

In applying the rule to the present case, it seems to me very clear, that the operation of the release must be confined to the several debt of Charles Lyman, because taking the whole instrument together, it was the intent of all the parties, that is, the assignor, the plaintiffs, and the other creditors, that it should be so limited. The note, though the several debt of Charles Lyman to some purposes, was also the joint debt of Charles and Z. M Lyman. The latter being a surety, on a

Averill
*v.*
Lyman.

note very recently given, that note may have been considered as well secured, in which case it is not to be presumed, that the holder will relinquish it, on receiving a composition, possibly a very small dividend. But the decisive circumstance is, that the debt mentioned in the schedule, corresponds precisely with the separate, distinct, simple contract debt, unsecured, due from Charles Lyman alone to the plaintiffs. Where a schedule is thus referred to as modifying and controlling the terms of the instrument, it is to be deemed as if embodied and made a constituent part of it. Suppose instead of a schedule, there had been a recital, setting forth that whereas Charles Lyman was indebted to several firms and persons, in the several sums following, to wit, &c., and then the assignment and release had followed, in the same terms, which were used in the present. The plaintiffs could have claimed a dividend only on the amount thus stated, and the release would have been limited to the same.

This rule, however, is not to be applied to a case, where there is a schedule, when it is manifest, that all debts of certain descriptions are intended to be embraced, though misstated in the schedule, unless limited to the precise amount stated in the schedule, and on which there are not separate parties, or separate security, or some other distinction, in the nature and character of the demand. The distinction here is, that the schedule precisely includes one separate unsecured debt of Charles alone, which leads to a satisfactory inference, that a distinct secured debt due from Charles and another, was not in the contemplation of the parties.